UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JEREMY CLARK,** | } |
| Plaintiff, | } |
| v. | } CASE NO. 5:09-cv-1789-SLB |
| **RAYMOND F. SCHINAZI,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is currently before the court on defendant Raymond F. Schinazi's ("Schinazi") Motion to Dismiss or, in the Alternative, to Stay or to Consolidate, (Doc. 6),[1] plaintiff Jeremy Clark's ("Clark") Motion for Leave to File First Amended Complaint, (Doc. 14), and Schinazi's Motion for Stay of Discovery and for Protective Order, (Doc. 23). Clark has filed this declaratory judgment action against Schinazi asking the court to declare an arbitration provision entered into between he and Pharmasset, Inc. ("Pharmasset"), which Schinazi signed on behalf of Pharmasset, to be void and unenforceable. (Doc. 1 at ¶¶ 8-10.) Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that Schinazi's Motion to Dismiss, (Doc. 6), is due to be granted, Clark's Motion for Leave to File First Amended Complaint, (Doc. 14), is due to be denied as futile, and Schinazi's Motion for Stay of Discovery and for Protective Order, (Doc. 23), is moot.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff Clark, a resident of Birmingham, Alabama, was previously employed by Pharmasset, a clinical-stage pharmaceutical company, as a Senior Research Specialist. (Doc. 1 at ¶¶ 1, 7 & Ex. A.)  Defendant Schinazi originally founded Pharmasset, serving as its chairman, director, and president before the company was restructured as a publically-traded entity.  (*Id.* at ¶ 2.)

In July of 2001, when Clark initially accepted Schinazi's offer to work at Pharmasset, Clark signed and entered into an employment agreement (the "Employment Agreement"), which set out the terms and conditions of his employment. (*Id.* at ¶ 7 & Ex. B.)  Schinazi, on behalf of Pharmasset, also signed the Employment Agreement.  (*Id.* at Ex. B.)

Section 6 of the Employment Agreement, labeled "Inventions," contains broadly drafted disclosure and assignment covenants, providing that:

> 6.1     The terms and provisions of this Section 6 shall apply only to Inventions (as hereinafter defined) which Employee makes, develops, or conceives, either solely or jointly with others, in the course of Employee's employment by the Company or with the use of the Company's Trade Secrets, time, material, facilities, employees or advisors.
>
> 6.2     Employee hereby assigns and agrees to assign to the Company, its successors, assigns, or designees, all of Employee's rights to inventions, improvements, discoveries, processes, formulae, designs, technical information, know-how, data, specifications, Trade Secrets, test results, patents, trademarks, copyrights, computer programs, and other proprietary information relating to the development, production, distribution and licensing of antiviral and anticancer agents, immunomodulators and other treatments of chronic or life-threatening diseases ("Inventions") which, during the term of Employee's employment by the Company, Employee makes, develops, or conceives, either solely or jointly with others, in the course of such employment or with the use of the Company's Trade Secrets, time, material, facilities, employees or advisors.  Employee agrees to fully and promptly disclose in writing to the Company any such Inventions as such Inventions from time to time may arise.

> 6.3   Employee further agrees, without charge to the Company other than reimbursement of Employee's reasonable out-of-pocket expenses, to execute and deliver all such further documents, including applications for patents and copyrights, and to perform such acts, at any time during or after the term of this Agreement as may be necessary, to obtain patents or copyrights in respect of the Inventions and to vest title to such Inventions in the Company, its successors, assigns, or designees and to carry out the purpose of this Section.  Without limiting the generality of the foregoing, Employee further agrees to give all lawful testimony, including without limitation depositions, during or after the term of Employee's employment, which may be required in connection with any proceedings involving any Trade Secret, patent or patent applications so assigned by Employee.

(*Id.*, Ex. B at §§ 6.1-6.3.)   In addition, the Employment Agreement also includes an arbitration clause (the "Arbitration Clause"):

> This Agreement shall be governed by and interpreted under the laws of the State of Georgia, without giving effect to the principles of conflicts of law of any jurisdiction. In the event that a party to this Agreement perceives the existence of a dispute with the other party concerning any right or duty provided for herein, the parties will, as soon as practicable, confer and attempt to resolve the dispute.  If the parties are unable to resolve such dispute amicably, then the parties hereby submit to final, binding arbitration.  Arbitration shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association by three arbitrators, one to be appointed by the Company, one to be appointed by Employee, and one to be appointed by the two arbitrators appointed by the Company and Employee. Arbitration shall take place in Atlanta, Georgia, and the decision of the arbitrators shall be enforceable, but not appealable, in a court of competent jurisdiction.  The fees and expenses incurred in connection with such arbitration shall be borne by the party initiating the arbitration proceeding (or equally by both parties if both parties jointly initiate such proceeding) subject to reimbursement by the party which does not prevail in such proceeding.

(*Id.*, Ex. B at § 16.)

While employed at Pharmasset, Clark "invented a 2'-flourinated nucleoside compound known as PSI-6130 which is used for treating [hepatitis C virus] infections." (Doc. 12 at 2.) PSI-6130 was patented, and Clark assigned the patent rights to Pharmasset pursuant to

3

section 6.2 of the Employment Agreement.  (*Id.*)  Clark later resigned from Pharmasset in early 2005.  (Doc. 7 at 2.)

Subsequent to his resignation, Clark learned that in addition to working at Pharmasset, Schinazi was also employed by the Department of Veteran Affairs as a Senior Research Career Scientist.  (Doc. 1 at ¶ 3; Doc. 3 at ¶ 3.)  Clark considered Schinazi's simultaneous employment at both Pharmasset and the Department of Veteran Affairs to violate federal conflict of interest laws, specifically 18 U.S.C. § 208, and 5 C.F.R. § 2635.802.  (*See* Doc. 1 at ¶¶ 3-5, 10; Doc. 5 at 1, 4-5.)  Section 208(a) provides that:

> Except as permitted by subsection (b) hereof, whoever, being an officer or employee of the executive branch of the United States Government, or of any independent agency of the United States, a Federal Reserve bank director, officer, or employee, or an officer or employee of the District of Columbia, including a special Government employee, participates personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which, to his knowledge, he, his spouse, minor child, general partner, organization in which he is serving as officer, director, trustee, general partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest–
>
> Shall be subject to the penalties set forth in section 216 of this title.

18 U.S.C. § 208(a).  Section 2635.802 states in pertinent part that:

> An employee shall not engage in outside employment or any other outside activity that conflicts with his official duties.  An activity conflicts with an employee's official duties:
> (a) If it is prohibited by statute or by an agency supplemental regulation; or
> (b) If, under the standards set forth in §§ 2635.402 and 2635.502, it would require the employee's disqualification from matters so central or critical to the performance of his official duties that the employee's ability to perform the duties of his position would be materially impaired.

5 C.F.R. § 2635.802.

On February 5, 2008, because of Schinazi's alleged violation of federal conflict of interest laws, Clark filed suit in this court against Schinazi and Pharmasset (the "prior pending action"), alleging seven counts and seeking a declaration that the Employment Agreement was void and unenforceable. *See* Complaint, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Feb. 5, 2008); (*see also* Doc. 8 at Ex. A). The case was assigned to the Honorable Lynwood Smith. Subsequently, on March 3, 2008, Schinazi and Pharmasset, citing the Employment Agreement's Arbitration Clause and 9 U.S.C. § 3,[2] each moved to stay the case pending arbitration. *See* Pharmasset, Inc.'s Motion to Stay Action Pending Arbitration, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Mar. 3, 2008); Dr. Schinazi's Motion to Stay Action Pending Arbitration, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Mar. 3, 2008); (*see also* Doc. 8 at Exs. C & F). Over Clark's opposition, Judge Smith granted Schinazi and Pharmasset's Motions, and entered a Memorandum Opinion and Order staying the case pursuant to the Employment Agreement's

---

[2] Section 3 states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

5

Arbitration Clause.[3]  *See* Memorandum Opinion, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Dec. 17, 2008); Order, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Dec. 17, 2008); (*see also* Doc. 8 at Exs. L & M).

Rather than file a Motion for Reconsideration or appeal the prior pending action, Clark filed the instant Suit for Declaratory Relief against Schinazi, seeking a declaration that the Employment Agreement's Arbitration Clause "is void and unenforceable in that it contemplates the violation of 18 U.S.C. § 208 as a mode of execution, was induced by fraud, and/or was unconscionable."[4]  (Doc. 1 at ¶¶ 10-11.)  In response, arguing that Clark's Complaint is merely a "wrongful attempt to avoid the ruling in [the prior pending action]," Schinazi filed a Motion to Dismiss or, in the Alternative, to Stay or to Consolidate.  (Doc. 6.)  Contemporaneously with the Motion, Schinazi also filed a Brief in Support, (Doc. 7), and

---

[3] Although Judge Smith's December 17, 2008 Order directed the Clerk of the Court to close the file "for administrative and statistical purposes," the Order made clear that such "action w[ould] have no effect on the court's retention of jurisdiction," and that "the file [could] be reopened, on either party's motion, for an appropriate purpose." Order at 4, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Dec. 17, 2008); (Doc. 8, Ex. M at 4.)

[4] While Clark filed his Suit for Declaratory Judgment pursuant to Alabama's Declaratory Judgment Act, Ala. Code § 6-6-221 (1975), (*see* Doc. 1 at ¶ 8), it is well settled that a federal district court sitting in diversity, as here, applies federal procedural law, *Burke v Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Accordingly, rather than under Alabama's Declaratory Judgment Act, the court will construe Clark's suit under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1278 n. 19 (2009) (noting that the Federal Declaratory Judgment Act "is 'procedural only,'" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937))); *El Paso Bldg. & Const. Trades Council v. El Paso Chapter Associated Gen. Contractors of Am.*, 376 F.2d 797, 799 (5th Cir. 1967) ("The Declaratory Judgment Act . . . operates procedurally . . . .") (citations omitted).

an evidentiary submission, (Doc. 8).[5]  Clark thereafter filed a Statement in Opposition, (Doc. 11), and a Brief in Support of Opposition, (Doc. 12).

Clark also filed a Motion for Leave to File First Amended Complaint.  (Doc. 14.)  Schinazi then filed a Response to Plaintiff's Motion for Leave to File First Amended Complaint, (Doc. 16), which prompted Clark to file a Supplement to Motion for Leave to File First Amended Complaint,[6] (Doc. 17).  Schinazi later filed a Sur-Response to Plaintiff's Supplement to Motion for Leave to File First Amended Complaint.  (Doc. 19.)

Subsequently, Schinazi filed a Motion for Stay of Discovery and for Protective Order, (Doc. 23), along with a Brief in Support, (Doc. 24).[7]  Clark then filed a Statement in Opposition to Defendant's Motion for Protective Order.  (Doc. 27.)  Finally, Schinazi filed a Reply in Support of Motion for Stay of Discovery and for Protective Order.  (Doc. 30.)

## II.  DISCUSSION

### A.   SCHINAZI'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY OR TO CONSOLIDATE, (DOC. 6)

In his Brief in Support of Defendant's Motion to Dismiss or, in the Alternative, to Stay or to Consolidate, Schinazi argues that "Clark has filed this Declaratory Judgment

---

[5] Schinazi's evidentiary submission includes the pertinent court filings of the prior pending action.  (*See* Doc. 7 at 1 n.1; *see generally* Doc. 8.)

[6] Clark filed the Supplement in order to attach his Proposed First Amended Suit for Declaratory Judgment, which Clark failed to attach to his initial Motion.  (*See* Doc. 17; Doc. 21.)

[7] The court entered an Order staying all discovery pending its resolution of Schinazi's Motion for Stay of Discovery and for Protective Order.  (Doc. 26.)

Action seeking relief denied in [the prior pending action]," and therefore, "[t]his Court, in its discretion, should decline to entertain this Declaratory Judgment Action." (Doc. 7 at 1.) In the alternative, Schinazi requests that the court "dismiss this action, stay this action until arbitration of the earlier case is complete, or consolidate this case with the earlier case so that they can be arbitrated together." (*Id.* at 1-2.) In contrast, Clark maintains that "[t]he current declaratory judgment action is not duplicative or vexatious," and therefore asks that the court "deny [Schinazi's] motion to dismiss and adjudicate this case." (Doc. 12 at 3, 7.)

"[T]he Declaratory Judgment Act . . . confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Indeed, the Act provides in pertinent part that:

> **(a)** In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). Thus, "'[t]here is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court' to hear a declaratory judgment action." *Wilton*, 515 U.S. at 288 (quoting E. Borchard, *Declaratory Judgments* 313 (2d ed. 1941)). And, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* (footnote omitted).

As stated by the United States Court of Appeals for the Eleventh Circuit, "[t]he factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature."

8

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1978) ("These principles rest on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" (quoting *Kerotest Mfg. Co.*, 342 U.S. at 183)). For that reason, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel*, 430 F.3d at 1135 (citations omitted); *see also Colo. River*, 424 U.S. at 817 ("Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . . As between federal courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.") (internal quotation marks and citations omitted). In the Eleventh Circuit, to overcome "the first-filed rule," a party must show "compelling circumstances." *Manuel*, 430 F.3d at 1135 (internal quotation marks and citation omitted).

In the instant case, Clark has failed to show "compelling circumstances" to warrant this court's exercise of jurisdiction over his Suit for Declaratory Judgment. Particularly, as Schinazi correctly points out, "[i]n this case, the only matter presented by the second suit is the validity of the arbitration provision found in [Clark's] Employment Agreement. [In the prior pending action, Judge Smith] already considered that issue and ruled that, under federal

9

law, it must be determined in arbitration."[8]  (Doc. 7 at 9.)  Simply put, the court agrees with

Schinazi that "[t]his case . . . does not just present a situation where the first case *may decide*

the matter presented by the second case.  The first case has in fact *already decided* the

---

[8] Clark argues that, in the prior pending action, Judge Smith considered only "whether a court or a panel of arbitrators should decide whether plaintiff's *Employment Agreement* is void for illegality," but did "not rule[] on the legality or enforceability of the *arbitration provision*."  (Doc. 12 at 3-4 (second emphasis added).)  This argument is without merit.  In the prior pending action, Clark "alleged that the arbitration provision *specifically* (in addition to the entire contract) [was] void for illegality."  Statement in Opposition to Defendants' Motion to Compel Arbitration at 4, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Mar. 28, 2008); (*see also* Doc. 8, Ex. H at 4).  In response, Judge Smith correctly held that:

> [U]nder the sweeping holding of *Buckeye* [*Check Cashing, Inc. v. Cardegna*], [the court] is powerless to consider plaintiff's challenges to the validity of the entire Employment Agreement, *including the arbitration provision*, because his challenges are not specific to the arbitration provision.  *See* 546 U.S. [440,] 445-46 [(2006)].  Plaintiff's argument that the arbitration provision is illegal because it contemplates a violation of 18 U.S.C. § 209 and was made in furtherance of business conducted in violation of 18 U.S.C. § 209 are 'ground[s] that directly affect[] the entire agreement."  *Buckeye*, 546 U.S. at 444 ("The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.").  Plaintiff's challenges to the validity of the arbitration provision could be made to any individual provision of the Employment Agreement.  Accordingly, the question of whether the Employment Agreement is void for illegality is an issue to be decided by a panel of arbitrators in the first instance, and not this court.  *See id.*

Memorandum Opinion at 11-12, *Clark v. Schinazi*, No. 5:08-cv-0204-CLS (N.D. Ala. filed Dec. 17, 2008) (internal footnote omitted) (emphasis added); (*see also* Doc. 8, Ex. L at 11-12).  Thus, Judge Smith declined to rule on the legality and enforceability of the Arbitration Clause *itself* because Clark's arguments, as in the instant case, were in reality arguments regarding the illegality of the Employment Agreement *as a whole*; Clark simply applied the arguments specifically to the Arbitration Clause so as to avoid the Court's ruling in *Buckeye*.  *See Buckeye*, 546 U.S. at 448-49 (holding that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator").  But, it is well-established that "[e]quity looks to the substance and not merely to the form."  *Young v. Higbee Co.,* 324 U.S. 204, 209 (1945).  Accordingly, Clark's contention that "[t]he current declaratory judgment action is not duplicative or vexatious," (Doc. 12 at 3), is unavailing.

matter." (*Id.* at 9-10.)  As such, Clark's Suit for Declaratory Judgment constitutes an improper use of the Declaratory Judgment Act.  *See* 26 C.J.S. *Declaratory Judgments* § 21 (2010) ("An action for a declaratory judgment cannot be used to relitigate questions as to which a former judgment is conclusive or as a substitute for an appeal.") (internal footnote omitted); E.H. Schopler, Annotation, *Validity and Effect of Former Judgment or Decree as Proper Subject for Consideration in Declaratory Action*, 154 A.L.R. 740 (1945) ("As a general observation from the cases, it may be stated that an action for a declaratory judgment cannot be used as a subterfuge for the purpose of relitigating a question as to which a former judgment is conclusive."); *see also Lopez-Alvarado v. Dep't of Homeland Sec.*, No. 6:09-cv-784-Orl-18GJK, 2009 WL 1543455, at *1 (M.D. Fla. June 1, 2009) (dismissing petitioner's declaratory judgment action as frivolous because petitioner "[was] merely attempting to re-litigate the same issues.").  As a result, this court declines to further entertain this Suit for Declaratory Judgment, and will not reconsider whether the Arbitration Clause is void and unenforceable, as Judge Smith has ruled that this issue must be determined by the arbitrator.  Schinazi's Motion to Dismiss, (Doc. 6), is therefore due to be granted, and Clark's Suit for Declaratory Judgment, (Doc. 1), is due to be dismissed.

**B.     CLARK'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT, (DOC. 14)**

While Clark's Suit for Declaratory Judgment, (Doc. 1), is due to be dismissed, it remains that Clark has filed a Motion for Leave to File First Amended Complaint. (Doc. 14.)

11

In the Motion, Clark requests leave to file his Amended Complaint, which adds allegations that Schinazi violated 5 C.F.R. § 2635.802, *see supra* p. 4, as well as additional facts concerning a license agreement entered into between Pharmasset and Emory University. (*See* Doc. 14 at 1; Doc. 17 at 1; Doc. 21, Ex. 1 at 1.)

Because Clark may no longer amend his Suit for Declaratory Relief "as a matter of course," *see* Fed. R. Civ. P. 15(a)(1),[9] whether to allow the amendment is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure. Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In exercising that discretion, the United States Supreme Court stated that absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . the leave sought should . . . be 'freely given.'" *Id.* at 1534-35 (quoting

---

[9] Rule 15(a)(1) states that:

**Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:
**(A)** 21 days after serving it; or
**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). Clark served his Suit for Declaratory Relief on Schinazi on September 14, 2009, (*see* Doc. 2), and Schinazi filed an Answer on October 5, 2009, (*see* Doc. 3).

12

Fed. R. Civ. P. 15(a)). In determining whether an amendment is "futile," the Eleventh Circuit has held that "[l]eave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)).

In the instant case, in his Sur-Response to Plaintiff's Supplement to Motion for Leave to File First Amended Complaint, Schinazi asserts that Clark's "proposed amendment is futile," and therefore asks that the court "deny leave to amend." (Doc. 19 at 5.) Specifically, Schinazi points out that "nowhere in [Clark's] proposed amendment does he allege anything illegal that is specific to the arbitration agreement, as required by *Buckeye*; rather, his attacks now, as was true in the [prior pending action], go to his employment agreement as a whole." (*Id.* at 9.) The court agrees.

Indeed, while Clark's Proposed First Amended Suit for Declaratory Judgment adds various facts and allegations, the crux of his argument, i.e. that Schinazi's simultaneous employment at both Pharmasset and the Department of Veteran Affairs violated federal conflict of interest laws, as well as the requested relief, i.e. a declaration that the Employment Agreement's Arbitration Clause is "void and unenforceable," remain the same. (*See generally* Doc. 21, Ex. 1 at Attachment.) Thus, as with his initial Suit for Declaratory Judgment, (Doc. 1), Clark's Proposed First Amended Suit for Declaratory Judgment, (Doc. 21, Ex. 1 at Attachment), likewise seeks to relitigate issues already decided by Judge Smith.

Accordingly, even if the court granted leave, Clark's First Amended Suit for Declaratory Judgment "would still be properly dismissed." *See Cockrell*, 510 F.3d at 1310 (citing *Hall*, 367 F.3d at 1263). Therefore, the court finds that Clark's Motion for Leave to File First Amended Complaint, (Doc. 14), is futile, and due to be denied.

### C. SCHINAZI'S MOTION FOR STAY OF DISCOVERY AND FOR PROTECTIVE ORDER, (DOC. 23)

In his Brief in Support of Defendant's Motion for Stay of Discovery and for Protective Order, Schinazi asks that the court stay discovery and enter a protective order regarding Clark's written discovery requests until the court rules on Schinazi's Motion to Dismiss or, in the Alternative, to Stay or to Consolidate. (Doc. 24 at 1.) Simply put, because Clark's Suit for Declaratory Judgment, (Doc. 1), is due to be dismissed, and his Motion for Leave to File First Amended Complaint, (Doc. 14), is due to be denied, Schinazi's Motion for Stay of Discovery and for Protective Order, (Doc. 23), is moot.

### CONCLUSION

For the reasons stated above, the court is of the opinion that Schinazi's Motion to Dismiss, (Doc. 6), is due to be granted, his alternative Motion to Stay or to Consolidate is moot, Clark's Motion for Leave to File First Amended Complaint, (Doc. 14), is due to be denied as futile, and Schinazi's Motion for Stay of Discovery and for Protective Order, (Doc.

23), is moot. An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

The Clerk of the Court is **DIRECTED** to provide a copy of this Memorandum Opinion to Clark at the following address:

> Jeremy Clark
> 349 S. Burbank Drive
> Birmingham, Alabama 35226

**DONE** this 7th day of September, 2010.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE